HENRY STEBBINS & another *vs.* LOUIS LEOWOLF.

In an action by an agent against his principal, to recover compensation for services as such agent, in the making of a contract which is illegal and void by statute, and also for money paid on account of the principal, in the execution thereof, the principal may defend against the action, on the ground of the illegality of the contract.

A contract for the sale of any of the stocks enumerated in the statute of New York, relating to stockjobbing, to be transferred at a future day, is absolutely void, if the party contracting for such sale and transfer, though in possession of the certificate or other evidence of the title to such stock, as required by the statute, at the time of the contract, is then already under a liability or obligation for the sale and transfer of an equal or greater number of shares of the same stock.

In an action by the holder of stock, who has contracted to sell and transfer the same at a future day, under the laws of New York, against the purchaser thereof, for refusing to receive a transfer and pay for such stock, the burden of proof is on the plaintiff to prove, that, at the time of the contract, he held the amount of stock so contracted to be sold free from any liability or obligation for the sale and transfer thereof.

According to judicial decisions in New York, it is settled, that, when the day of the performance of a contract, upon which days of grace are not allowed, falls on Sunday, that day is not to be counted, and the contract may be performed on the next Monday.

A contract entered into in New York, by parties resident there, and to be performed there, is to be governed by the laws of that state.

THIS was an action of assumpsit, — the declaration containing the common money counts, — brought by the plaintiffs, who were brokers in the city of New York, to recover of the defendant, also of New York, the sum of $1512·03, and interest, for commissions and differences, on the purchase and sale of certain stocks, made by the plaintiffs under the order and for the account of the defendant.

It was in evidence, at the trial, which was before *Wilde,* J., in this court, that the plaintiffs, in pursuance of directions from the defendant, and on his account, on the 30th of November, 1841, made contracts for the purchase of two hundred shares of the stock of the Harlaem Railroad, one hundred of Parker and Whitehead, and one hundred of Robert Birney, transferable in sixty days at the option of the buyer; and that the plaintiffs made similar contracts, by the direction and on account of the defendant, on the 1st of December following, for the purchase of one hundred and twenty-five shares

12 *

of the same stock, one hundred of Jacob Little & company, and twenty-five of Charles Christmas, transferable in sixty days at the option of the buyer.

It was also in evidence, that, at or about the time when these contracts matured, application was made by the plaintiffs at the defendant's place of business and lodgings in New York, and that he could not be found; that it is the usage in New York, when a party, employing a broker to buy stock for him, is delinquent in meeting the contract, for the broker to sell the stock at the time of maturity, or credit such delinquent party with the market price of the day, and call upon him for the loss, or account to him for the gain, if any; that the plaintiffs, agreeably to this usage, upon the defendant's failing to meet the contracts made by them on his account, charged him with the stock at the prices for which the contracts were made, together with interest thereon to the 29th of January, 1842, and credited him with the market price of the stocks on that day; and that on the 31st of January, 1842, which was Monday, the plaintiffs commenced this action against the defendant, to recover the difference between the price contracted to be paid for the purchase of the stock, and the market value of the same, on the 29th of January, together with interest and commissions, and caused the defendant to be arrested in the suit, at Boston, on the same day, before eight o'clock in the morning.

It appeared from the depositions of Christmas, Whitehead, Birney and Little, which were introduced by the plaintiffs, that Christmas, at the time of the contract with him for the purchase of the twenty-five shares, was the owner of that number, and that he was so at the time of the maturity of the contract, but that there was one day during the interval between, when he had no shares standing in his name; that Parker and Whitehead, at the time of the contract with them, and also at the maturity thereof, were the owners of one hundred shares, but they could not state whether they were so during the whole time the contract had to run; and that Little and Birney, at the times of the contracts severally made

with them, owned one hundred shares each, and continued to do so, until the maturity of their contracts.

It appeared, also, from the testimony of the plaintiffs' clerk, that at the time of the transaction with the defendant, they were the owners of stock in the Harlaem Railroad; that they had contracts to run upon time; and that they usually had, and, he believed, on the day of the purchases in question, stock standing in their names, and owned by them, to the amount of several hundred shares.

The deponents, above mentioned, being inquired of, severally, how many shares they had agreed to sell and deliver, at the time of their contracts with the plaintiffs, and on what terms, and at what time, answered and testified in substance as follows : —

Christmas stated, that at the time in question, he had bargained to sell seventy-five shares ; that he had no time purchases ; that, on the morning of the 1st of December, 1841, there were twenty-five shares standing in his name, and, in the course of the day, one hundred more ; that he was under contract to deliver seventy-five shares sold in November, seller sixty days ; and that he had no agreement with the plaintiffs, except in regard to the twenty-five shares ; but he did not state, whether the agreement to sell the seventy-five shares was the only time contract he had made.

Whitehead testified, that it was impossible for him to say how many shares Parker and Whitehead had at that time agreed to purchase, without a more particular examination of their books than he could then make ; that they had the stock actually in their possession that day, and not a mere contract or agreement for the sale thereof ; and that it was impossible to answer as to the number of shares, the terms and conditions of all the shares they then had, without a more minute examination of their books than he could then give.

Little stated, that he did not recollect how many shares Little & company had bargained for or agreed to buy ; that they had some contracts on time to purchase ; that he did

not then recollect how many they were under contract to deliver ; and that they had no contract with the plaintiffs but for these one hundred shares.

Birney testified, that it was impossible for him to say how many shares he had bargained for or agreed to purchase at the time inquired of ; that he was under a contract to deliver one hundred shares, — how many more he could not state ; and that he had no contract with the plaintiffs except as to the one hundred shares.

The defendant introduced and read in evidence, from the Revised Statutes of New York, the following provisions of Part I. Chapter 20, Title 19, Article 2, relating to " stock-jobbing : " —

§ 6. " All contracts, written or verbal, for the sale or transfer of any certificate or other evidence of debt due by or from the United States or any separate state, or of any share or interest in the stock of any bank, or of any company incorporated under any law of the United States, or of any individual state, shall be absolutely void, unless the party contracting to sell or transfer the same shall, at the time of making such contract, be in the actual possession of the certificate or other evidence of such debt, share or interest, or be otherwise entitled in his own right, or be duly authorized by some person so entitled, to sell or transfer the said certificate or other evidence of debt, share, or interest so contracted for."

The defendant contended, among other things : 1st, That the contract for the twenty-five shares to be purchased of Christmas, by its terms, matured on Sunday ; that the defendant had the whole of the following Monday to perform it in; and, consequently, that this action, which was commenced as early as eight o'clock on the morning of that day, was prematurely brought ; 2d, That the burden of proof was upon the plaintiffs to show, that the parties, with whom they contracted to purchase stock, on the defendant's account, had, at the time of making the contracts, all the shares necessary to meet their contracts of sale, and that they had failed to do this, except, perhaps, in regard to the twenty-five shares

bought of Christmas; and, 3d, That, unless the plaintiffs should prove, affirmatively, that the parties, of whom the purchases of stock were made, were so able to meet all their contracts of sale, those contracts were void by the statute above referred to relating to stockjobbing.

The presiding judge ruled, upon these grounds, for the defendant, and the jury thereupon returned a verdict in his favor. If the rulings were correct, judgment is to be entered on the verdict; if not, a new trial is to be ordered.

*G. W. Phillips,* for the plaintiffs.

*A. H. Fiske,* for the defendant.

DEWEY, J. The defendant alleges, that the contracts for the purchase of Harlaem Railroad stock, which are the sole ground of the claim in this action upon the defendant, were wholly illegal, being in violation of the statute of New York, in relation to stockjobbing. Rev. Sts. of N. Y. vol. i. p. 710.

A preliminary question was raised in the argument of this case, though not particularly presented by any of the rulings of the presiding judge, at the trial before the jury, namely : whether, supposing the defence under this statute would be a good defence as between the vendor and vendee of the stock, the defendant can rely upon it as a defence to an action brought by the plaintiff, as the agent of the defendant, for money paid by him upon a contract entered into by reason of such agency. It is a sufficient answer, we think, to this suggestion, that the present case is one where it fully appears, that the plaintiff was a party to the original transaction; was conusant of all the facts, and of the objections to the validity of the contract entered into by him; and volunteered to pay the claims of the vendors of the stock, without any legal liability on his part. Under these circumstances, the plaintiff must be taken to have paid the money in his own wrong, if the contract he entered into was in fact an illegal one. The case of *Ward* v. *Van Duzer,* 2 Hall, 162, is very like the present, in that respect, and fully sustains the ground, that this defence is open to the defendant. Story's Agency, § 346, is to the same effect.

The principal inquiry is, whether these contracts for the purchase of stock were illegal, under the provisions of the statutes of New York. Evidence was offered tending to show the purchase of stock of various individuals by the plaintiffs for the defendant. The evidence also tended to prove, that, at the time of making such contracts, the several vendors held in their names stock corresponding with or equal in amount to the stock which they had stipulated to transfer, within the period of sixty days, at the option of the buyer, as to the time. But, as was contended by the defendant, the evidence also tended to prove, that although the respective vendors held stock to the several amounts named in their contracts with the plaintiff; yet they were severally obliged, by force of previous contracts with other persons, to sell and deliver such stock to an amount much larger than the entire amount so held by them. The defendant insists, that being thus under obligation by a previous contract to transfer all the stock which they possessed, they had no stock that could be the subject of a legal contract of sale on the 29th of November, 1843.

The case presents two questions for consideration : 1st, Are the contracts in evidence within the provisions of the stock-jobbing act of New York ? and, 2d, Upon whom is the burden of proof, to show that the vendors, at the time of making their contracts to sell and transfer stock at a future day, had stock which they might then legally contract to sell ?

1. As to the first point, is it enough, if it should be literally true, that the vendor at the time of the contract was possessed of stock to the amount, which he then contracted to sell and transfer at a future day? Take the case of Parker and Whitehead, who held one hundred shares of the Harlaem Railroad stock, on the day of making their contract with the defendant's agent. Suppose it were shown, that, on the day of making the contract, they then had outstanding two other contracts previously made, each for the sale and delivery of one hundred shares of Harlaem Railroad stock, " to be transferred at any time in sixty days at buyer's option." Was it

competent for Parker and Whitehead to make a third contract to sell one hundred shares, having for its basis no other stock than the same one hundred shares ? Does the possession of one hundred shares of the Harlaem Railroad stock authorize the owner to make sales of such stock to an indefinite amount, provided each sale be in itself for an amount less than the stock so held by the vendor ? If this be so, then, it is obvious, that the spirit and purpose of the statute may be easily defeated. An owner of stock may thus be competent to make sales to an indefinite amount, upon the basis of holding a very limited number of shares of stock ; as the ownership of a hundred shares may furnish a capital adequate to trade upon to the amount of a thousand, provided the contracts therefor be for amounts not exceeding severally one hundred shares each. Such a construction would clearly defeat the great purposes of the statute. As it seems to us, the proper construction of the statute is, that the vendor must hold the stock, which he contracts to sell at a future day, free from other liabilities and obligations, that have already exhausted it as the basis of a contract for a sale and delivery thereof.

2. The next question is, upon whom is the burden of proof, to show that the vendors, at the time of making the contracts, had the shares of stock to the amount stipulated to be sold, and that such shares were so held by them, as to authorize them to contract for a sale and delivery thereof at a future day ?

If this was a contract in writing, promising to pay a certain sum of money, and the promise was of a character, which imported a consideration on the face of it, so that the proof of the contract would of itself make a *prima facie* case, there is no doubt, that, if the defendant would avail himself of any secret taint which rendered the contract illegal, as, for example, if the defendant, in an action upon a note of hand, alleges usury, or sets up in defence, that the note was given for a gaming debt, the burden of proof rests upon the party who relies upon such defence. But the present

case differs from the one just stated. The plaintiff, in this case, must show a legal contract, binding upon the vendor and vendee, with relation to these shares, before he can establish a *prima facie* case. He proposes, then, in the first instance, to show an agreement by the one party to sell, and by the other to' buy, certain shares of Harlaem Railroad stock, to be transferred at a future day. But evidence to this extent shows no valid contract. The law requires, that the vendor should be the owner of the stock he stipulates to transfer, at the time he makes such contract, and this fact he is bound to prove. It is an element, essential to the validity of the contract, and one without which the contract could not be enforced against the plaintiff, as the purchaser, or the plaintiff as agent have any claim against the defendant as his principal.

3. Another ruling, to which an exception was taken, at the trial, was, " that if the contract for a portion of the shares matured on Sunday, the vendee had the whole of the Monday following, in which to perform his ·contract ; and that as o the shares purchased on the 1st of December, 1841, they naving been purchased on a credit of sixty days, and the last of the sixty days falling on Sunday, the present action was prematurely commenced on the following Monday." This pplies to only a portion of the shares embraced in the contracts of sale, but is deemed important, inasmuch as it is said to apply to all those shares, which, in the view we have taken of the law, can be considered as so held and possessed by the vendors, as to be the subject of a legal contract of sale and transfer at a future day.

This contract was entered into in the state of New York, was made by parties resident there, and to be performed there, and is therefore peculiarly to be governed by the rules of law of that state.

There has not been an entire uniformity in the various judicial tribunals, in their decisions, as to the time of performance of a contract, when the day of maturity on the face of the contract falls on a Sunday. But it is enough for the present purpose, that the law of the state of New York, upon

this point, has become well settled. In the case of *Salter* v. *Burt*, 20 Wend. 205, it was held, that "when the day of the performance of contracts other than instruments upon which days of grace are allowed, falls on Sunday, that day is not counted, and a compliance with the stipulation of the contract on the next day (Monday) is deemed in law a performance." Such seems to be the rule of law in New York as to contracts. As to the computation of time, when a statute declares that an act shall be done within a certain number of days, and the last of these days falls on a Sunday, a different rule has prevailed. *Ex parte Dodge*, 7 Cow. 147. The case of *Alderman* v. *Phelps*, 15 Mass. 225, is to the same effect. As to so much of the claim of the plaintiffs, as has its foundation in the contract made on the 1st of December, 1841, this action was prematurely brought, and for that reason, if for no other, the plaintiffs cannot recover for money paid on that contract.

4. The only remaining inquiry is, whether the plaintiff offered the necessary and proper evidence of the fact, that the various vendors of the stock, the subject of these contracts, had the same in their possession as owners, and as the subject of such sale by them at the time of making these contracts. Upon that point, the evidence was very loose and uncertain; so much so, that under the rule we have stated, as to the burden of proof, we suppose there was no question as to the character of the evidence.

The rules of law having been correctly stated at the trial, before the jury, the verdict, which was for the defendant, must be sustained. *Judgment on the verdict.*